**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

GABRIEL GONZALEZ,                                                                            PLAINTIFF
REG. #30515-112

2:18CV00091-BSM-JTK
Consolidated with:
2:18cv000121-BSM-JTK

GENE BEASLEY, et al.                                                                DEFENDANTS

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Judge Brian S. Miller. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you

1

must, at the same time that you file your written objections, include the following:

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## **DISPOSITION**

### I. Introduction

Plaintiff Gabriel Gonzalez is a federal inmate incarcerated at the Forrest City Low Federal Correctional Institution (FCI), who filed this federal civil rights action pursuant to Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971). Plaintiff alleged Defendants retaliated against him and prevented him from practicing his Catholic religion, submitted

a false declaration in a previous lawsuit, denied him medicated shampoo, and improperly punished him by removing word processing equipment.

This matter is before the Court on the Motion to Dismiss filed by Defendants Beasley, Gaither-Miller, Kruger, and Rivera (Doc. Nos 42). Plaintiff filed responses to the Motion (Doc. Nos. 47, 48). On February 5, 2019, this Court issued an Order construing Defendants' Motion to Dismiss as a Summary Judgment Motion and providing the parties the opportunity to submit additional matters relevant to their filings within fifteen days. (Doc. No. 51) Plaintiff submitted additional documents in support of his Motion response. (Doc. No. 54)

## II.    Complaint

In his Amended Complaint in Gonzalez v. Beasley, 2:18cv00091 (Beasley 1), Plaintiff alleged that Defendant Rivera violated his rights by permitting retaliation for Plaintiff's attempts to grieve the denial of religious services, and by assisting Defendant Kruger in withholding his chronic care medication (medicated shampoo). (Doc. No. 5, p. 20) He also claimed Gaither-Miller filed a false declaration in a previous lawsuit concerning whether he had exhausted his administrative remedies. (Id., p. 10, Doc. No. 12) Defendant Beasley was dismissed on October 2, 2018 (Doc. No. 21). In Gonzalez v. Beasley, 2:18cv00121 (Beasley 2), Plaintiff alleged Defendant Beasley improperly removed word processing equipment and failed to supply typewriter ribbons and wheels, denying Plaintiff access to the courts. (Doc. No. 1) He alleged the same facts against

3

Defendants Gaither-Miller and Kruger, and also that Defendants Rivera and Beasley permitted retaliation based on his Catholic faith. The cases were consolidated on September 28, 2018. (Doc. No. 20) Prior to the consolidation, the Magistrate Judge in Beasley 2 issued a Proposed Findings and Recommendation that Defendant Beasley be dismissed. However, that Recommendation was never adopted prior to the consolidation.

**III.    Motion for Summary Judgment**

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

A. **Exhaustion**

Defendants ask the Court to dismiss Plaintiff's allegations because he failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e. According to the Declaration of Leslie Hagler, Associate Warden's Secretary at FCI, Forrest City, the three-step federal administrative remedy process is instituted by the filing of an informal resolution with staff, and then a formal resolution to the Warden through a BP-9 form at the Unit level. (Doc. No. 43-1, p. 3) Two appeals from that level are provided, to the Regional Director through a BP-10 form, and then to the General Counsel for the Bureau of Prisons (BOP), via a BP-11 form (Id.) The BOP does not retain copies of rejected administrative remedy requests or appeals, but any submissions from an inmate are recorded and maintained in SENTRY, which is a computer-based information system available at each institution, region, and Central Office. (Id., pp. 3-4) During Plaintiff's incarceration, he filed 103 Administrative Remedy Requests or Appeals, and exhausted five administrative remedies. (Id., p. 4) Of those five, only one concerns an allegation in this lawsuit, which is grievance appeal 905080-A1 concerning the allegation of denial of typewriter wheels, tape and correction tape. (Id., pp. 4-5).

According to the PLRA,

> No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies

as are available are exhausted.

42 U.S.C. § 1997e(a). The courts have interpreted this provision as a mandatory requirement that administrative remedies be exhausted prior to the filing of a lawsuit. Exhaustion of remedies includes filing a grievance and appealing such grievance through all appropriate levels. In this case, as mentioned above, the final level is the General Counsel for the Central Office of the Bureau of Prisons, pursuant to a BP-11 form. In Booth v. Churner, the United States Supreme Court held that in enacting the PLRA, "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." 532 U.S. 731, 741 (2001). In addition, in Chelette v. Harris, the Eighth Circuit Court of Appeals held that "the statute's requirements are clear: If administrative remedies are available, the prisoner must exhaust them. Chelette failed to do so, and so his complaint must be dismissed, for 'we are not free to engraft upon the statute an exception that Congress did not place there.'" 229 F.2d 684, 688 (8th Cir. 2000). In Chelette, the plaintiff inmate did not completely exhaust his administrative remedies because the warden told him he would take care of the matter. The Court held that "Section 1997(e)(a) says nothing about a prisoner's subjective beliefs, logical or otherwise, about the administrative remedies that might be available to him." Id. Therefore, the Court concluded that the statute clearly requires exhaustion. In Johnson v. Jones, the Court held that "under the plain language of section 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court....If exhaustion was not completed at the time

of filing, dismissal is mandatory." 340 F.3d 624, 627 (8th Cir. 2003) (emphasis in original). Finally, in <u>Jones v. Bock,</u> the Supreme Court held that while the PLRA itself does not require that all defendants be specifically named in an administrative grievance, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." 549 U.S. 199, 218 (2007).

### 1.     Retaliation/Denial of Religious Practice

Plaintiff alleged Defendants denied him the ability to practice his Catholic religion and retaliated against him by cancelling subsequent services. According to Hagler's Declaration, Plaintiff filed a grievance complaining that the Easter Service on March 28, 2018 was cancelled and not rescheduled. (Doc. No. 43-1, p. 5) This grievance did not allege retaliation in the form of additional cancellations on April 26, 2018, May 3, 2018, and May 17, 2018, in response to the original grievance. (<u>Id</u>.) In addition, this grievance (937907-A2) was exhausted on September 20, 2018, **after** Plaintiff filed these lawsuits. (Beasley 1 was filed on June 28, 2018, and Beasley 2 was filed on August 21, 2018). (<u>Id</u>.)  Therefore, Defendants state Plaintiff did not exhaust his administrative remedies prior to filing the lawsuits about this claim.

In response, Plaintiff states that prior to filing that grievance, he attempted to use the sensitive submission grievance process which cuts down on the exhaustion procedures when a prisoner asserts issues he fears would cause physical reprisal. Plaintiff states this remedy was exhausted, but rejected at the Regional level, finding that he should re-submit

7

his grievance at the institutional level.

Having reviewed the documents submitted by the parties, the Court finds that Plaintiff did not exhaust his administrative remedies with respect to his allegation in this case, that Defendants retaliated against him by cancelling religious services. Although Plaintiff claims he exhausted a grievance about this, he admits the first grievance he filed (which was in 2017, prior to the 2018 Easter service cancellation), was rejected at the Regional level because it was not considered to be a sensitive issue; therefore, Plaintiff was required to resubmit the grievance at the institutional level. Thus, that issue was not exhausted at that time, and even though Plaintiff resubmitted a grievance which ultimately was exhausted in September 2018, that grievance was not exhausted prior to the filing of this lawsuit and did not allege retaliation. Therefore, the Court finds this claim should be dismissed.

### 2. False Declarations

Plaintiff claims Defendant Gaither-Miller filed a false declaration in a previous lawsuit, stating that Plaintiff did not exhaust his administrative remedies with respect to the claims in that lawsuit. (Gonzalez v. Rivera, et al., 2:16CV00119-JLH) According to Hagler's Declaration, Plaintiff filed eighteen grievances concerning this issue, and each was addressed by the Warden on November 28, 2017. (Doc. No. 43-1, pp. 6, 14-21) Plaintiff appealed these decisions to the South Central Regional Office on December 13, 2017, and the Region accepted the first appeal, 922512-R1. (Id.) The other seventeen were

rejected because Plaintiff failed to submit each appeal with individual attachments, rather than one set of attachments for all the appeals, and Plaintiff did not timely resubmit the rejected appeals. (Id.) Appeal 922512-R1 was denied on December 21, 2017, and Plaintiff did not appeal this to the next level, the Office of General Counsel, but resubmitted it and the other seventeen rejected appeals to the Region. (Id.) The Region rejected all eighteen submissions because the first, 922512-R1, already had been addressed, and because the others were untimely resubmitted. (Id., pp. 6, 60) Plaintiff next appealed 922512-R1 and the rejections of the other seventeen appeals to the Office of General Counsel on March 1, 2018, two months after the Region denied his appeal. (Id., pp. 6-7, 14-21) The Office of the General Counsel rejected 922512-A1 as untimely and included a note that that if the inmate provided a letter from BOP staff indicating that his late filing was outside of his control, he could resubmit the appeal. (Id., pp. 7, 62) The other seventeen appeals were rejected because they were filed at the wrong level, and the Counsel informed Plaintiff to resubmit those to the Regional level with a letter from staff indicating that the reason for the late filing was outside of his control. (Id.) Plaintiff did not re-file any of those grievances/appeals. (Id., pp. 7, 14-21)

Plaintiff claims he was prevented from timely filing appeals by late receipt of rejection notices. Specifically, he claims that he did not receive a December 18, 2017 rejection response from the Region until January 3, 2018, and therefore, could not timely appeal within the required fifteen days. (Doc. No. 54, p. 229) He claims Defendants

9

manipulated the grievance process to prevent him from exhausting his administrative remedies.

The Court has reviewed the numerous records provided by the parties, including 720 pages submitted by Plaintiff which include numerous duplicate copies of the same documents. (Doc. No. 54) Although Plaintiff is correct that he did not receive the Region response until January 3, 2018, he did not appeal that response to the Central Office until March 1, 2018, nearly two months after he received the response. (Doc. No. 54, p. 232) In addition, the rejection of his untimely appeal contained a statement that he could provide staff verification indicating that the reason for the untimely filing was not the fault of the inmate. (Id.) However, there is no indication that Plaintiff attempted to do this. Although there is a document from staff member C. Halk which states that the inmate copy machine was broken during October 2017, that memo does not address the reason why Plaintiff filed an untimely appeal in 2018.

The United States Supreme Court held in Ross v. Blake that three types of incidents could render an administrative remedy unavailable to an inmate. 136 S.Ct. 1850, 1859 (2016). Those situations include: where the procedure operates as a dead end, with officers unable or unwilling to provide any relief; where the administrative scheme is so opaque that no ordinary prisoner can discern or navigate it; or when prison administrators thwart inmates from taking advantage of a grievance procedure. Id. at 1859-1860. However, in this case, Plaintiff does not allege facts to support a finding that any of the Defendants or

others prevented him from filing an administrative remedy. First, it is clear that Plaintiff adequately understood the grievance process, having submitted over one hundred grievances and/or appeals during his incarceration. Next, the rejections of his grievances were based on the failure to follow procedures and deadlines, and he failed to adequately pursue the alternative avenues as set forth in the rejections. Therefore, the Court finds that Plaintiff failed to exhaust his administrative remedies as to this issue.

### 3. Medicated shampoo

Plaintiff complained Defendant Kruger improperly denied him medicated shampoo. However, he provides no evidence to counter Ms. Hagler's declaration that he did not exhaust his administrative remedies as to this issue. (Doc. No. 43-1, pp. 4-5) Therefore, this claim also should be dismissed.

### 4. Denial of typewriter access

Defendants do not dispute that Plaintiff did exhaust his administrative remedies as to this claim, by filing an appealing grievance 905080-A1. (Doc. No. 43-1, pp. 5, 23-46)

### B. Access to the Courts

However, Defendants state that the typewriter claim against Beasley should be dismissed because he was dismissed from this lawsuit on October 2, 2018. They also claim Plaintiff's allegation against Beasley is based solely on his former position as Warden of the FCI and should be dismissed. Plaintiff properly notes that although Beasley was dismissed from Beasley 1, he was never dismissed from Beasley 2, and he did not object

to Beasley's dismissal in Beasley 1 because the cases were later consolidated.[1]

In his Complaint, Plaintiff alleged that Defendant Beasley abolished the use of the prison's fifty portable word processor units and replaced them with eight manual typewriters which were stripped of their ribbons, typing wheel and correction tapes, thus rendering them inoperable. (Beasley 2, Doc. No. 1, pp. 9-10) Plaintiff further alleged that Defendant's actions caused delay, hindrance and interference with his access to the Courts. (Id., p. 14) While this adequately states personal participation and knowledge by Defendant, the Court finds that this allegation fails to state a claim for denial of access to the Courts.[2] In order to state such a claim, Plaintiff must allege that Defendant impeded his right to meaningful access to the courts, and that this caused Plaintiff to suffer an actual injury. Lewis v. Casey, 518 U.S. 343, 351-353, 361 (1996). "To prove actual injury, [a prisoner] must demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded.'" White v. Kautzkey, 494 F.3d , 677, 680 (8th Cir. 2007) (quoting Lewis, 518 U.S. at 353). In this case, Plaintiff does not allege any injury to a legal claim, and the

---

[1] Although the Court in 2:18cv00121 originally recommended Beasley's dismissal, Plaintiff objected in that case, and the recommendation was never adopted. (Doc. Nos. 3, 9)

2 The Prison Litigation Reform Act (PLRA) requires federal courts to screen prisoner complaints seeking relief against a governmental entity, officer, or employee. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that: (a) are legally frivolous or malicious; (b) fail to state a claim upon which relief may be granted; or (c) seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

12

Court also notes that both his Complaints were typed and legible. Therefore, the Court finds that Plaintiff's claim against Defendant Beasley should be dismissed, for failure to state a constitutional claim for relief.

### C. Respondeat Superior

Plaintiff claimed former Warden Rivera created a policy of condoning discriminatory actions by allowing his employees to preclude him from participating in Easter activities and prevented him from adequately pursuing his claims through the administrative remedy process. Defendants ask the Court to dismiss these allegations as based on his supervisory capacity and for failure to allege any personal action by Rivera. Plaintiff does not address this claim in his Response.

"The general responsibility of a warden for supervising the operation of a prison is not sufficient to establish personal liability." Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995). Federal defendants are liable for their personal acts only, and Plaintiff does not allege actual participation and/or knowledge by Defendant Rivera with respect to the alleged unconstitutional issues. Therefore, the Court finds that Plaintiff's claims against Rivera also should be dismissed.

### IV. Conclusion

IT IS, THEREFORE, RECOMMENDED, that:

1. Defendants' Motion to Dismiss, which this Court construes as a Motion for Summary Judgment (Doc. No. 42) be GRANTED.

2. Defendants Gaither-Miller and Kruger be DISMISSED without prejudice for failure to exhaust administrative remedies.

3. Defendants Beasley and Rivera be DISMISSED with prejudice for failure to state a constitutional claim for relief.

IT IS SO RECOMMENDED this 26th day of February, 2019.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE